# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**GLORIA I. COLOMER,**

**Plaintiff,**

**-vs-**                                              **Case No.  6:05-cv-1550-Orl-DAB**

**COMMISSIONER OF SOCIAL
SECURITY,**

**Defendant.**

_____

## MEMORANDUM OPINION AND ORDER

Plaintiff seeks judicial review of the denial of her claim for Social Security disability benefits.
For the reasons set forth herein, the administrative decision is **AFFIRMED.**

### PROCEDURAL HISTORY

Plaintiff protectively filed an application for disability insurance benefits on January 16, 2003
(R. 45-48).  The application was denied initially, and upon reconsideration.  Thereafter, Plaintiff
requested and received a hearing before an Administrative Law Judge (herein "the ALJ") (R. 26, 233-
260).  The ALJ issued an unfavorable decision on May 26, 2005 (R. 7-14).  The Appeals Council
denied Plaintiff's request for review (R. 3-5), making the ALJ's determination the final decision of
the Commissioner.  This action timely followed (Doc. No. 1).

### NATURE OF CLAIMED DISABILITY

Plaintiff claims disability with an amended onset date of February 10, 2003 (R. 49), due to
"muscle pain [in her] hands [and] knees, watery eyes, blue frozen fingers" arising from lupus and
arthritis (R. 55).

*Summary of Evidence Before the ALJ*

At the time of the ALJ's decision, Plaintiff was fifty two years old (R. 236), with a high school education and two years of community college (R. 237). She obtained a secretarial certificate (R. 237) and had a stable work history as a secretary (R.56).

The ALJ determined that Plaintiff has systemic Lupus with nephritic syndrome (R. 12), and the medical evidence before the ALJ is consistent with that finding. In summary, the medical records pertinent to the time period at issue[1] indicate that on January 31, 2003, Plaintiff presented to her treating nephrologist, Uday K. Ranjit, M.D., complaining of "significant body ache" (R. 138). Laboratory data supported the impression of systemic Lupus with nephrotic syndrome, with a possibility of membranous glomerulonephritis. *Id.*

On return visit April 28, 2003, her white cell count was "improving slowly" (R. 137). Plan was to continue medications, and return in three months.

On June 11, 2003, Dr. Ranjit completed a lupus residual functional capacity questionnaire (R. 125-131) in which he opined that Plaintiff had nephrotic syndrome with possible membranous glomerulonephritis, and checked a box indicating that Plaintiff had non-erosive arthritis involving pain in her hands and knees with swelling, redness, tenderness, warmth, and significant limitation of motion (R. 125). Dr. Ranjit opined that Plaintiff's severe joint pain would often interfere with her attention and concentration (R. 126) and she would not be able to perform even a "low stress" job. He opined that Plaintiff could only sit for about two hours in an eight-hour work day and stand/walk

---

[1]The administrative record includes treatment notes dating back to 1998. As Plaintiff has alleged an amended onset date of February 10, 2003, and her earnings record and testimony indicates that she worked through 2002, the materiality of these earlier records is not apparent. Indeed, Plaintiff's brief notes the diagnosis of systemic lupus in August of 1999, but states that "for quite some time after the diagnosis, due to the medications she was being given" she "did not have many problems associated with the Lupus." (Doc. No. 15 at 4). Plaintiff focuses her arguments on the medical records of January 2003, and later. *Id.* This Court does likewise.

for the same amount of time (R.128).  Additionally, she could only lift ten pounds occasionally and would have significant limitations in doing repetitive reaching, handling and fingering (R. 129).   Dr. Ranjit indicated that Plaintiff would be absent more than four days per month as a result of her impairments and treatment (R. 130), and that her impairments had lasted or could be expected to last at least 12 months (R. 126).

On July 7, 2003, Plaintiff presented to consultative examiner Nitin Haté M.D., for a physical examination (R. 194-196).  On examination, strength was normal in all major muscle groups.  Grip strength was normal, and Plaintiff's sensations, reflexes, coordination and dexterity were within normal limits.  Plaintiff's ranges of motion in all joints were also within normal limits.  The examiner found that Plaintiff's medical reports were consistent with Lupus with nephrotic syndrome, but that she "appear[ed] to be stabilized on medications and at this time there is no evidence of any inflammatory joint disease." *Id.*  Dr. Haté did note that Plaintiff "may have some difficulty in strenuous physical activities." (R. 196).

A non-examining state agency physician completed a physical residual functional capacity assessment on July 17, 2003, which indicated that Plaintiff could occasionally lift 20 pounds and frequently lift 10, and could stand, walk and sit for about six hours in an eight hour workday (R. 197-204).

Plaintiff returned to Dr. Ranjit next on August 19, 2003, for medication adjustments due to some arthritis symptoms (R. 136), and again on November 18, 2003 (R. 135).  It was noted that Plaintiff could not afford a suggested kidney biopsy.  By December 22, 2003, Plaintiff reported that she was feeling better (R. 134).

A second non-examining state agency physician completed a residual functional capacity assessment on December 5, 2003, and opined that Plaintiff could occasionally lift 20 pounds and frequently lift 10, and could stand, walk and sit for about six hours in an eight hour workday (R. 205-212).

On February 11, 2004, Dr. Ranjit write a letter opining that Plaintiff had systemic Lupus with mild proteinuria and normal renal function (R. 132).  On March 29, 2004, Plaintiff returned to Dr. Ranjit with swelling around her eyes, which improved on medication (R. 213).  On return visit on May 6, 2004, Plaintiff had an "unremarkable" physical examination, and her lab work was "quite normal" (R. 217).  On October 22, 2004, Plaintiff was reportedly doing "quite well" and was to return to the doctor in six months (R. 222).  Six days later, on October 28, 2004, Dr. Ranjit reviewed the residual functional capacity evaluation he had previously completed regarding Plaintiff and opined that the restrictions he placed on Plaintiff were still applicable (R. 124).

The record indicates that Plaintiff had her hemoglobin tested on January 19, 2005, February 16, 2005, and March 16, 2005 (R 229-232).  Each time, it was noted that she was "stable" on her medication.

Plaintiff appeared and testified at her hearing as to her pain and limitations.  She testified that she stopped working in February 2003 because she became "very ill, very tired." (R. 240).  She testified that she has not been hospitalized at any time since the onset, and that she gets a rash if exposed to the sun (R. 240).  She testified that she gets watery eyes and she went to see an eye doctor and "he says my vision is fine." (R. 242).  She stated that her fingers hurt, but that she moves them all day long and can make a fist (R. 242-243).  She lives in a two story house (R. 243).  She goes to church weekly and tries to fix meals at home (R. 244).  She can do chores but "slowly, very slowly,

and its very difficult." (R. 245).  She stated that she could sit for 20-25 minutes before becoming uncomfortable and having to "do the exercise"; could stand and/or walk for 30 minutes; and could lift 10 pounds (R. 248).  She goes grocery shopping with her husband (R. 255) and tries to read and watch TV during the day (R. 251).  She testified that her worst symptom that prevented her return to work was her concentration, vision, the pain in her hands, and her numb toes (R. 252).

In his determination, the ALJ found that Plaintiff's subjective complaints of pain were not totally credible, in light of Dr. Haté's assessment and her May 6, 2004 physical examination (R. 13 and 14, Finding 5).  The ALJ determined that Plaintiff retained the Residual Functional Capacity (herein "RFC") to perform sedentary work where she can lift up to ten pounds occasionally; sit for up to six hours in an eight hour workday; stand or walk for up to four hours in an eight hour workday; noting that she may have to change positions occasionally (R. 14, Finding 6).  Thus, the ALJ determined Plaintiff could perform her past relevant work as a secretary (R. 14, Finding 7) and was therefore not disabled (R. 14, Finding 9).

## STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  Substantial evidence is more than a scintilla, and it must do more than create a suspicion of the existence of the fact to be established; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Walden v. Schweiker*, 672 F.2d 835, 838-839 (11th Cir. 1982).

The Court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Walker v. Bowen*, 826 F.2d 996, 1000 (11th Cir. 1987).  Even if the Court

finds that the evidence weighs against the decision, the Court must affirm if the decision is supported

by substantial evidence.  *See Harwell v. Heckler*, 735 F.2d 1292 (11th Cir. 1984); *Martin v. Sullivan*,

894 F.2d at 1520 (11th Cir. 1990).  The Court may not reweigh the evidence or substitute its own

judgment, even if the Court finds that the weight of the evidence is against the decision.  *Martin*, 894

F.2d at 1529.  While there is a presumption in favor of the findings of fact, no such presumption

attaches to the ALJ's legal conclusions about the proper standards to be applied in evaluating claims.

*MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *Welch v. Bowen*, 854 F.2d 436, 438

(11th Cir. 1988).

***ISSUES AND ANALYSIS***

*The Five Step Evaluation*

The ALJ must follow five steps in evaluating a claim of disability.  *See* 20 C.F.R. §§ 404.1520,

416.920.  First, if a claimant is working at a substantial gainful activity, she is not disabled.  29 C.F.R.

§ 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments

which significantly limit her physical or mental ability to do basic work activities, then she does not

have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if a claimant's

impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she

is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent her from

doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's

impairments (considering her residual functional capacity, age, education, and past work) prevent her

from doing other work that exists in the national economy, then she is disabled.  20 C.F.R. §

404.1520(f).  Here, the ALJ determined this case at step four of the evaluation, by finding that

Plaintiff's RFC was such that she could perform her past relevant work as a secretary.

-6-

Plaintiff asserts that the ALJ erred in 1) determining that Plaintiff had the RFC to perform sedentary work contrary to the opinion of the treating physician; 2) improperly evaluating Plaintiff's pain and 3) improperly evaluating her credibility.  The Court has reviewed the briefs, the record and the applicable law and finds no error.

*Treating Physicians*

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.  *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements.)

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).  When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) the medical evidence supporting the opinion; 4) consistency with the record

-7-

as a whole; 5) specialization in the medical issues at issue; 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d).  However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1527(d)(2).

Applied here, Plaintiff contends that "the ALJ erred in determining that the claimant has the residual functional capacity to perform sedentary work when the treating physician indicated that she would be unable to perform sedentary work, and no other treating physician indicated that the claimant had the residual functional capacity as determined by the ALJ." (Doc. No. 15 at 6).  In further support of this argument, Plaintiff contends that "the ALJ does not even discuss the opinion of the treating physician at all" (apparently, with respect to the second letter, dated October 28, 2004[2]), and only references the initial opinion by finding that he was "not persuaded that the limitations described in Exhibit 3F/2-8 persisted for more than 12 months from the alleged onset date of February 10, 2003." (R. 13.)  As no other treating source contradicted Dr. Ranjit's opinion that Plaintiff was disabled, Plaintiff contends that the ALJ's conclusion to the contrary was not supported by substantial evidence.  The argument is unpersuasive.

Initially, the Court notes that Plaintiff has selectively cited to the transcript, with respect to the ALJ's treatment of Dr. Ranjit's opinions.  The entire quote reads:

---

[2]Plaintiff mistakenly refers to this opinion as being rendered on January 28, 2004.

In light of the medical evidence (Exhibits 3F/9[3], 4F[4], and 8F[5]) and the claimant's longstanding diagnosis of Lupus (Exhibits 2F[6] and 13F/13-15[7]), the undersigned is not persuaded that the limitations described in Exhibit 3F/2-8 [Dr. Ranjit's lupus questionnaire] persisted for more than 12 months from the alleged on set date of February 10, 2003.

The issue is not, as framed by Plaintiff, whether any other treating physician indicated an RFC to the contrary of Dr. Ranjit's opinion. Rather, the issue is whether the above quoted rationale for discrediting Dr. Ranjit's opinion is supported by substantial evidence.

The ALJ cites to specific record references which note that Plaintiff's condition was not so limiting both before her onset date, and, importantly, after that date. As noted by the ALJ, Dr. Haté determined that Plaintiff was stable on her medications and found no significant abnormality in his examination. Dr. Ranjit's own treatment notes indicate that Plaintiff did well on her medications, and Plaintiff told Dr. Ranjit in December 2003 that she was feeling much better. Indeed, Plaintiff's counsel acknowledges in her brief that "for quite some time" after the diagnosis Plaintiff did not have much problems with her Lupus "due to the medications she was given." The latter records also indicate that Plaintiff's anemia was "stable" on medication.

Although Plaintiff contends that the ALJ erred in not discussing Dr. Ranjit's conclusory October 28, 2004 opinion, the Court sees no error. As is clear from the quote above, the ALJ

---

[3]The February 11, 2004 letter from Dr. Ranjit finding that Plaintiff had systemic Lupus with mild proteinuria and normal renal function (R. 132).

[4]Dr. Haté's report (R. 194-96).

[5]The February and March 2005 hemoglobin results showing that Plaintiff was "stable."(R. 230-32).

[6]Treatment notes covering the period from 4/16/99 to 2/17/2000 by Caryn Hasselbring, M.D..(R. 106-23).

[7]As there is no exhibit labeled 13F, this is apparently a typographical error. Dr. Ranjit's late 2002 to early 2003 notes are found at Exhibit 3F, page 13-15. (R. 138-40).

discredited the *limitations* found by Dr. Ranjit.  The October 28, 2004 letter did not add any new limitations and simply adopted the earlier opinion without any discussion or explanation.  As the earlier opinion was adequately discredited as being inconsistent with Dr. Ranjit's treatment notes and the consultative examination findings, no error is present.  Moreover, the Court notes that the October 28 opinion was issued just six days after Dr. Ranjit opined that Plaintiff was doing "quite well" and did not need to return for another six months.  The opinion was adequately discredited in accordance with the appropriate legal standards.

The Court also finds that the RFC finding made by the ALJ was supported by substantial evidence.  The RFC finding that Plaintiff could perform sedentary work is consistent with the clinical notes of Dr. Ranjit, the examination of Dr.Haté (who found only that Plaintiff would have difficulty with strenuous activities), and with the opinions of the non-examining state agency physicians.

*Pain and Credibility*

Plaintiff next takes issue with the ALJ's treatment of Plaintiff's allegations of pain, and findings with respect to Plaintiff's credibility.

Pain is a non-exertional impairment.  *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).  The ALJ must consider all of a claimant's statements about her symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising

from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence).  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true.  *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Applied here, Plaintiff contends that she met the pain standard because 1) she had Lupus, and 2) Dr. Ranjit opined that the pain she experienced was the result of this impairment.  As Dr. Ranjit opined that Plaintiff was not a malingerer, Plaintiff contends that the pain standard has been met, and it was error to discredit her allegations.  The contention is without merit.

As discussed above, while it is clear that Plaintiff has systemic Lupus, the ALJ found that it was not of such severity as to cause the limitations complained of.  As explained by the ALJ (R. 13), Dr. Haté found that Plaintiff's condition was stable while on medication, and his examination was essentially normal.  Dr. Ranjit noted that on May 6, 2004, Plaintiff's examination was unremarkable

-11-

and her laboratory tests were "quite normal." The other evidence of record indicates that Plaintiff was able to work for years with her Lupus, had not been hospitalized, and save for the occasional reference to arthritis or body ache, the treatment notes do not reflect complaints of uncontrollable pain.

While the Court is certain that Plaintiff suffers from her illness and does not doubt that the illness causes her pain, the issue is not whether Plaintiff has some pain.  The issue is whether Plaintiff's pain is severe enough to be disabling, as she alleges.  Here, the ALJ's determination to the contrary is adequately supported by substantial evidence and complies with the appropriate legal standards.  As such, it must be affirmed.

### CONCLUSION

For the reasons set forth above, the administrative decision is **AFFIRMED.**  The Clerk is directed to enter judgment accordingly, terminate all pending matters and close this file.

**DONE** and **ORDERED** in Orlando, Florida on November 6, 2006.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record

-12-